**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

CIVIL ACTION NO. 2:2016-CV-199 (WOB-CJS)

JESSICA BARBERICK, AS ADMINISTRATRIX OF
    ESTATE OF FRANK BARBERICK                        PLAINTIFFS
JESSICA BARBERICK, AS MOTHER AND NEXT
    FRIEND OF L.B., A MINOR


VS.                 <u>MEMORANDUM OPINION AND ORDER</u>


ROGER ALLEN
BRETT DOVER
JOSHUA ELLISON                                                  DEFENDANTS
PAUL HILMER
MIKE STEWARD

       This is a civil rights action, in which Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for claims under the Eighth Amendment through the Fourteenth Amendment's Due Process Clause. The case also includes pendant state law claims. The matter now comes before the Court on Defendants' Motions to Dismiss. (Docs. 20, 23, 24). Having reviewed the matter, and being sufficiently advised, the Court now issues this Memorandum Opinion and Order.

**I. Facts[1]**

       In the fall of 2015, Frank Barberick was 45 years old, divorced, and had at least two daughters. (Doc. 16). On approximately November 4, 2015, Florence Police and Florence Fire Department paramedics[2] went to an apartment Barberick shared with his mother and assisted Barberick after he attempted to intentionally overdose on prescription pills. (*Id.* at 126).

---

[1] All facts in this case are drawn from Doc. 16, the Plaintiffs' Amended Complaint.
[2] It is not clear from the record who the first-responders were on November 4, 2015, and whether they were the same as the individuals who responded on November 16, 2015.

1

Twelve days later, on November 16, 2015, dispatch received a 911 hang-up call from the same apartment. (*Id*.). The dispatcher informed those on the radio about the suicide attempt at that residence 12 days earlier. (*Id*.).

Boone County Sheriff's Deputy Defendant Brett Dover was the first to arrive at the apartment. (*Id*.). Barberick's mother immediately informed Dover that her son had swallowed two handfuls of pills. (*Id*.). Dover then asked Barberick what he had taken. Barberick said he had taken Elavil,[3] as his doctor prescribed. (*Id*.).

Barberick's mother then brought out two pills she had found on the floor, which Barberick identified as a muscle relaxer and the generic name for Elavil. (*Id*. at 127). Dover noticed Barberick slurring his speech, appearing "extremely intoxicated," and unable to make sense. (*Id*. at 128-31). He spoke with Barberick's mother again, and she reiterated that her son "had taken a handful of the pills about half an hour to forty-five minutes" before Dover arrived. (*Id*. at 127). This prompted Dover to radio dispatch for the first time, informing dispatch of Barberick's name and identification information. (*Id*.).

After radioing dispatch, Dover went back to speaking with Barberick. While Dover and Barberick spoke, Barberick's mother was nearby calling Barberick's ex-wife. (*Id*.). Barberick had spoken with his ex-wife earlier that day, and Barberick's mother wanted to know whether Barberick said goodbye. (*Id*.). As he heard his mother speaking to his ex-wife, Barberick requested the opportunity to call his daughter. (*Id*.).

The conversation turned back to the pills Barberick allegedly consumed. After initially refusing to say how many pills he had taken, Barberick admitted he had taken "maybe two or three" Elavil. (*Id*. at 128).

---

[3] Elavil is a central nervous system depressant. (Doc. 16, Page ID# 129).

2

After this admission, Barberick called his daughter. (*Id.*). As Barberick spoke to his daughter nearby, his mother told Dover about her son's November 4 suicide attempt and said she believed "the same thing" was happening at the moment. (*Id.*).

This prompted Dover to radio dispatch for the second time. (*Id.*). He told dispatch that Barberick had attempted suicide on November 4, and that Barberick's mother believed her son was doing the same thing now and appeared "extremely intoxicated." (*Id.*).

Dover ended the dispatch call and went back to speaking with Barberick. This time they discussed alcohol consumption. Barberick said he had consumed two or three beers. (*Id.*). Barberick's mother supplemented this admission by saying Barberick drank vodka. (*Id.*).

Once again, the conversation returned to pill consumption. Barberick now admitted that he had taken some Xanax, which he had not previously mentioned. (*Id.* at 129). Dover asked how long it had been since Barberick took these pills. Barberick said it was approximately two hours, but his mother said it was at most an hour. (*Id.*).

The ambulance containing Florence Fire Department EMTs Defendants Paul Hilmer and Joshua Ellison (EMTs) had arrived by this point, and Dover asked Barberick to come downstairs to have the EMTs examine him. (*Id.*). Barberick refused. (*Id.*). So Dover arrested Barberick on an unrelated outstanding warrant and placed him in handcuffs. (*Id.*). Even after he was in handcuffs, Barberick still refused to go downstairs, and attempted to remain on a couch. (*Id.* at 129-30). The EMTs thus came upstairs to examine Barberick. (*Id.* at 130). Florence Police Department Officer Defendant Mike Steward accompanied them. (*Id.*).

Steward and the EMTs found Barberick lying face-down on a couch in handcuffs. (*Id.*). One of the EMTs[4] borrowed a flashlight from Dover and shone it directly into Barberick's eyes

---

[4] The Complaint does not identify whether it was Hilmer or Ellison.

for a total of seven seconds. (*Id*.). The EMT then stood up and reported to the room that now contained the other EMT, Dover, a layperson who was accompanying Dover, Steward, and Barberick's mother that, "His pupils, I mean he's nothing, no narcotics." (*Id*.) This meant the EMTs thought Barberick was merely drunk. (*Id*.). They decided not to provide any further treatment. (*Id*.).

Barberick could not walk under his own power at this point, so one of the EMTs, Steward, and Dover helped Barberick down the stairs and into Dover's cruiser. (*Id*.). Once Barberick was in the back of the cruiser, Dover and Steward briefly discussed whether the Boone County Detention Center would accept Barberick in his current condition. (*Id*.). They determined that it would be best if Steward took Barberick to the jail, since the arrest was within Florence city limits, and Steward was a Florence Police Officer. (*Id*. at 130-31). Steward, Dover, and Florence Police Department Lieutenant Defendant Roger Allen then moved Barberick from Dover's cruiser to Steward's cruiser. (*Id*. at 131). Since Barberick had lost most of his motor function by this point, the officers had to place him across the back seat of Steward's cruiser, with his feet draped into the front passenger seat. (*Id*.). As Steward drove, he claims he heard Barberick "snoring or snoozing." (*Id*.).

Steward arrived at the jail and requested assistance moving Barberick because he was "intoxicated." (*Id*.). When Steward and jail personnel opened the cruiser door, they immediately realized that Barberick was unresponsive. (*Id*.). Jail personnel attempted CPR and requested paramedics. (*Id.*). Some paramedics did arrive, and noted that there was an earlier dispatch call because Barberick "was drunk and had taken a handful of pills." (*Id*.). Ultimately, though, the paramedics were unable to resuscitate Barberick and he died. (*Id*. at 132). The autopsy listed the cause of death as "combined drug intoxication." (*Id*.).

**II. Analysis**

**A.**

Barberick's estate sued the two EMTs and three law enforcement officers involved under 42 U.S.C. § 1983. All five Defendants raise a qualified immunity defense. "In § 1983 constitutional torts like this one, qualified immunity prevents government officials from being held liable if (1) the officers did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Arrington-Bey v. City of Bedford Heights, Ohio*, ___ F.3d ___, 2017 WL 2432389, at *3 (6th Cir. Feb. 24, 2017)(citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Thus, this Court must find for Barberick on both prongs of the qualified immunity test for him to make out a § 1983 claim against each Defendant.

**B.**

Before addressing each Defendant's qualified immunity claim, the Court must initially decide whether Barberick was in custody at all relevant times of this case. The custody question is important because officials generally do not have a duty to render competent medical care to those they rescue. *Peete v. Metro. Gov't. of Nashville and Davidson Cty.*, 486 F.3d 217, 223 (6th Cir. 2007). Yet, "[t]here are two exceptions to this rule, instances where the state is obligated to aid or protect an individual from further danger: 1) the custody exception and 2) the state created danger exception." *Id.* (internal citations and quotations omitted).

Thus, if a Plaintiff like Barberick was in custody, the state must come to his aid. The Sixth Circuit has noted that a seizure for custody purposes is an "intentional interference with a person's liberty by physical force or a show of authority that would cause a reasonable person consciously

to submit." *Id*. at 220. If police officers are simply trying to assist a person undergoing a medical emergency, that would not be placing the person in custody. *Id*. at 222 (holding a man was not in custody when police attempted to assist him during an epileptic seizure). But the Sixth Circuit differentiates that situation from when police arrest a person and place him in handcuffs. *Id*. (citing *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901-02 (6th Cir. 2004)).

Here, Dover placed Barberick in handcuffs and arrested him for an outstanding warrant. (Doc. 16, PageID# 129). That occurred before the two EMTs arrived to treat Barberick. (*Id*.). Thus, Barberick was in custody at all relevant times, and this Court will consider him a pretrial detainee.[5] *See Peete*, 486 F.3d at 221.

## C.

Since Barberick was a pretrial detainee, and since he suffered a medical injury while in police custody, this Court must analyze the case under the Eighth Amendment's deliberate indifference standard.[6] *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). In *Farmer*, the Supreme Court found that prison officials were deliberately indifferent[7] to a known risk to a transgender prisoner by placing the prisoner in a male federal prison after multiple prior incidents. *Id.* at 828.

---

[5] The parties either expressly or implicitly agree to this analysis. (Doc. 20, PageID# 252; Doc. 23-1, PageID# 300 n. 2; Doc. 29, PageID# 392).
[6] The Supreme Court has never applied the deliberate indifference test to a pretrial detainee under the Fourteenth Amendment. *See* Catherine T. Struve, *The Conditions of Pretrial Detention*, 161 U. Pa. L. Rev. 1009, 1012 (2013). But the Sixth Circuit has adopted *Farmer*'s deliberate indifference standard for pretrial medical detainee claims, *see Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009), and for claims resulting from pretrial detainee suicide. *See Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005); *see also* Kyla Magun, Note, *A Changing Landscape for Pretrial Detainees? The Potential Impact of Kingsley v. Hendrickson on Jail-Suicide Litigation*, 116 Colum. L. Rev. 2059, 2072-73 n. 96 (2016). Therefore, the Eighth Amendment deliberate indifference jurisprudence applies to pretrial detainees through the Fourteenth Amendment. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003).
[7] The deliberate indifference standard means the officers must prevent an "unnecessary and wanton infliction of pain." *Terrance v. Northville Regl. Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)(quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)); *see also Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994).

6

In defining the deliberate indifference standard, the Court held that an "official cannot be found liable . . . unless the official knows of and disregards an excessive risk to [the Plaintiff's] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

This holding clarified that the deliberate indifference standard has both an objective and subjective[8] component. *Id.* at 838. Therefore, to prove that the Defendants in this case were deliberately indifferent to Barberick's medical needs, Plaintiffs must show the officials were both objectively and subjectively aware of the risk of serious harm, and that they failed to act appropriately in response.

**D.**

With the *Farmer* test in mind, it is clear that Plaintiffs' claims against Ellison, Hilmer, Dover, and Steward require discovery to provide context for this fact-intensive analysis. As the Sixth Circuit has held, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). The reasoning for this rule is that "it is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds given the fact development often needed to decide whether the state official violated clearly established federal law." *Singleton v. Cmmw. of Kentucky*, 843 F.3d 238, 242 (6th Cir. 2016)(deciding a case at the motion to dismiss stage because it merely involved the

---

[8] In the decades since *Farmer*, the Sixth Circuit has clarified the test for the subjective knowledge, laying out a three-prong test:
> First, the plaintiff must show that the official subjectively perceived the facts that gave rise to the inference of the risk. Then, the plaintiff must show that the official actually drew the inference, and, importantly, not just that he or she should have done so. Finally, the plaintiff must show that the official consciously disregarded the perceived risk.

*Cooper v. Cty. of Washtenaw*, 222 F. App'x. 459, 465–66 (6th Cir. 2007)(internal quotations and citations omitted); *see also Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003).

Supremacy Clause, and factual development was unlikely to alter that legal analysis); *see also Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)(noting the fact-intensive nature of some Constitutional tests make it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*"). This Court has recently applied that principle, as well. *Libertarian Natl. Comm., Inc. v. Holiday*, 3:14-cv-63, 2016 WL 482325, at *4–6 (E.D. Ky. Feb. 5, 2016); *S.R. v. Kenton County Sheriff's Off.*, 2:15-cv-143, 2015 WL 9462973, at *6 (E.D. Ky. Dec. 28, 2015).

A *Farmer* analysis for an Eighth Amendment violation is extremely fact-dependent. *See, e.g., Perez v. Oakland Cty.*, 466 F.3d 416 (6th Cir. 2006). Because the Plaintiffs' complaint makes out at least a plausible claim for relief on the § 1983 claims against Ellison, Hilmer, Dover, and Steward,[9] this is the type of case in which qualified immunity is best addressed at summary judgment, rather than a motion to dismiss. *See Gavitt v. Born*, 14-12164, 2015 WL 5013844, at *9 (E.D. Mich. Aug. 24, 2015). The Court will thus deny Defendants' Motions to Dismiss without prejudice so the parties can conduct discovery on the multitude of outstanding factual questions.[10] *See S.R.*, 2015 WL 9462973, at *6.

**E.**

---

[9] Based on the facts in the complaint, discovery could ultimately show that the EMTs violated a pretrial detainee's right to receive medical care. *See, e.g., Perez*, 466 F.3d at 428. Discovery could also reveal that Dover and Steward violated their duty to assure a pretrial detainee receives adequate medical assistance for a known condition. *See Smith v. Cty. of Lenawee*, 505 F. App'x. 526, 532 (6th Cir. 2012); *Border v. Trumbull Cty. Bd. Of Comm'rs*, 414 F. App'x. 831, 838-39 (6th Cir. 2011); *Harrison v. Ash*, 539 F.3d 510, 520 (6th Cir. 2008).

[10] To name just a few of those questions, it would be helpful to know: (a) what each Defendant knew, and when he knew it; (b) whether the EMTs followed normal medical procedures for determining whether a person is under the influence of narcotics; (c) whether Dover and Steward actually observed the EMTs treatment of Barberick on the couch in the apartment; (d) the qualifications of the EMTs; (e) the familiarity and history between the EMTs and the law enforcement officers; (f) the drugs Barberick took, their effect on the human body, and how quickly those drugs take effect; and (g) whether, given the drugs in his system and the timing of the events, Barberick's life could have been saved.

Though discovery is required to adequately address the claims against Ellison, Hilmer, Dover, and Steward, the factual allegations in the Complaint are sufficient for the Court to decide that there is not a plausible claim against Allen. As Allen points out, the general rule is that if an official is aware that trained medical professionals have treated a detainee, the official is justified in relying on the judgment of those medical professionals. *See Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009); *see also Mitchell v. Hininger*, 553 F. App'x. 602, 607 (6th Cir. 2014). The Sixth Circuit thus holds that "absent a reason to believe (or actual knowledge) that [medical professionals] are mistreating (or not treating) a [detainee], a non-medical [] official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Smith v. Cty. of Lenawee*, 505 F. App'x. 526, 532 (6th Cir. 2012)(internal quotations omitted). When that medical care is not obviously cursory or deficient, the official can rely on it without accruing liability. *Id.* at 534.

Here, Allen did not witness any of the EMTs' treatment of Barberick. He only arrived on the scene after an EMT, Steward, and Dover had carried Barberick out of the apartment, and his only role was assisting with the transfer of Barberick from one vehicle to another. (Doc. 16, PageID# 131). Therefore, Allen did not witness any potentially "inadequate" treatment by the EMTs, *Harrison*, 539 F.3d at 520, and he could reasonably rely on their assessment that Barberick was merely drunk. *Smith*, 505 F. App'x at 532. He is therefore entitled to qualified immunity. The Court will grant his Motion to Dismiss (Doc. 20) and the claims against him shall be dismissed with prejudice.

**F.**

Barberick's daughter, through her guardian, also brings a loss of consortium claim under § 1983. (Count VI, Doc. 16, PageID# 145). The Sixth Circuit has stated that:

> In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort. Accordingly, only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.

*Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000)(internal citations omitted)(allowing a suit because the decedent's children brought the suit in their capacity as co-administrators of the decedent's estate).

Therefore, Barberick's daughter is barred from bringing a loss of consortium claim for damages on the § 1983 claims. This Court will grant Defendants' Motions to Dismiss the loss of consortium claims as to any § 1983 claim.[11]

### G.

Plaintiffs also bring a claim against Hilmer and Ellison for medical malpractice under Kentucky law. (Count V, Doc. 16, PageID# 144). In Kentucky, a public official is entitled to qualified official immunity if he performs (1) a discretionary act, (2) in good faith, and (3) within the scope of his authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). But a public official does not get qualified official immunity if he negligently performing a ministerial function, which is a duty that is "absolute, certain, and imperative, involving mere execution of a specific act based on fixed and designated facts." *Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 717 (Ky. 2007). Notably, even a ministerial act requires some discretion to perform. *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014)(citing 63C Am.Jur.2d *Public Officers and Employees* § 319); *see also Yanero*, 65

---

[11] This conclusion does not affect any loss of consortium claim that Barberick's daughter may have deriving from her Kentucky state law claims for wrongful death (Count V, Doc. 16, PageID# 144-45), which she asserts only against the EMTs. *See* KY. REV. STAT. ANN. § 411.145; *Giuliani v. Guiler*, 951 S.W.2d 318, 323 (Ky. 1997), *as modified on denial of reh'g* (Oct. 2, 1997).

S.W.3d at 522.

Like the § 1983 claims against Hilmer and Ellison, this medical malpractice claim is fact-intensive, and similarly requires discovery before an informed decision can be made on qualified official immunity. As it stands, it is not clear whether Hilmer and Ellison were carrying out a ministerial act by simply conducting an accepted medical procedure for assessing whether a person was under the influence of narcotics. *See Gould v. O'Bannon*, 770 S.W.2d 220, 222 (Ky. 1989)(holding that "[t]he administration of medical care is a ministerial function" if it is a matter of conducting a defined procedure); *see also Pauly v. Chang*, 498 S.W.3d 394, 406 (Ky. App. 2015), *as modified* (Dec. 23, 2015), *review denied* (Sept. 15, 2016)(noting that medical professionals who are treating a patient are performing a ministerial function); *Blue v. Pursell*, 793 S.W.2d 823, 825 (Ky. App. 1989)(remanding for trial court to apply *Gould*'s rule to a medical professional).

While Plaintiffs have alleged a plausible claim for medical malpractice, the Court cannot adjudicate the EMTs' qualified official immunity defense without further factual development. The Court will therefore deny the Motion to Dismiss these claims without prejudice.

## III. Conclusion

Therefore, having reviewed the matter, and being otherwise advised, **IT IS ORDERED** that:

1. The Motions to Dismiss on the basis of qualified immunity as to Defendants Ellison, Hilmer, Dover, and Steward (Docs. 20, 23, 24) are hereby **DENIED** without prejudice to renewal at the summary judgment stage;

2. Defendant Allen's Motion to Dismiss (Doc. 20) is hereby **GRANTED**.

3. A discovery deadline is hereby set for December 31, 2017;

11

4. A dispositive motions deadline is hereby set for January 31, 2018.

This 27th day of June, 2017.



Signed By:
*William O. Bertelsman* W.OB
United States District Judge